Case 2:20-cr-00418-SB   Document 1   Filed 09/15/20   Page 1 of 9   Page ID #:1

FILED
CLERK, U.S. DISTRICT COURT

09/15/2020

CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2020 Grand Jury

| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>JOHN PAUL THROPAY, M.D.,<br><br>　　　　Defendant. | CR 2:20-cr-00418-JFW<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1347: Health Care Fraud; 18 U.S.C. § 982: Criminal Forfeiture] |
|---|---|

　　　The Grand Jury charges:

## COUNTS ONE THROUGH FOUR

[18 U.S.C. §§ 1347, 2]

A.　INTRODUCTORY ALLEGATIONS

　　　At times relevant to this Indictment:

　　　1.　Blue Sky Hospice, Inc. ("Blue Sky"), was a hospice care provider located at 16935 Vanowen Street, Suite 205, Van Nuys, California 91406, in Los Angeles County, within the Central District of California.

　　　2.　Defendant JOHN PAUL THROPAY, M.D., was a resident of Arcadia, California, within the Central District of California. Defendant THROPAY was a physician licensed in California who worked for Blue Sky from approximately October 2014 to October 2016. From

at least July 2015 to July 2016, defendant THROPAY was the Medical Director of Blue Sky.  Defendant THROPAY was also the Medical Director associated with several other hospice companies.

3. OWNER 1 was a co-owner of Blue Sky.

4. OWNER 2 was a co-owner of Blue Sky, a registered nurse licensed in California, and the Director of Nursing ("DON") at Blue Sky.

5. NURSE 1 was a licensed vocational nurse licensed in California who worked for Blue Sky.

The Medicare Program

6. Medicare was a federal health care benefit program, affecting commerce, that provided benefits to individuals who were 65 years and older or disabled.  Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Medicare was a "health care benefit program" as defined by Title 18, United States Code, Section 24(b).

7. Individuals who qualified for Medicare benefits were referred to as Medicare "beneficiaries."  Each Medicare beneficiary was given a Health Identification Card Number ("HICN") unique to that beneficiary.

8. Hospices, physicians, and other health care providers who provided services to beneficiaries that were reimbursed by Medicare were referred to as "providers."

9. To become eligible to participate in Medicare, Medicare required prospective providers to be licensed by a state or local agency.  After obtaining the applicable license, Medicare required prospective hospice providers to submit an application in which the

prospective provider agreed to: (a) comply with all Medicare-related laws and regulations, including the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b), which prohibits the offering, paying, soliciting, or receiving of any remuneration for the referral of Medicare beneficiaries; and (b) not submit claims for payment to Medicare knowing they were false or fraudulent or with deliberate ignorance or reckless disregard of their truth or falsity.  If Medicare approved the application, Medicare assigned the provider an identifying number, which enabled the provider to submit claims to Medicare for reimbursement for services provided to Medicare beneficiaries.

10.  To qualify for reimbursement for hospice services, Medicare required: (1) a physician to certify that the beneficiary was terminally ill; and (2) the beneficiary to sign an election form statement choosing hospice care instead of other Medicare benefits. Medicare considered a beneficiary to be "terminally ill" if the beneficiary's life expectancy was six months or less if the beneficiary's illness ran its normal course.  Hospice services reimbursed by Medicare were palliative in nature and included, but were not limited to, medications to manage pain symptoms, necessary medical equipment, and bereavement services to surviving family members.  Once a beneficiary chose hospice care, Medicare would not cover treatment intended to cure the beneficiary's terminal illness. The election form was required to include an acknowledgement that the beneficiary had been given a full understanding of hospice care, including the palliative rather than curative nature of treatment, and an acknowledgement that the beneficiary understood that certain Medicare services were waived by the election.

11. If the beneficiary had a primary care physician ("PCP"), Medicare required the PCP and a physician at a hospice to certify in writing that the beneficiary was terminally ill with a life expectancy of six months or less, if the terminal illness ran its normal course.

12. Medicare was divided into different program "parts": Part A, Part B, Part C, and Part D. Medicare covered hospice services for those beneficiaries who were eligible for Medicare Part A (hospital-related services). When a Medicare beneficiary elected hospice coverage, the beneficiary waived all rights to Medicare Part B (outpatient physician services and procedures) coverage of services to treat or reverse the beneficiary's terminal illness while the beneficiary was on hospice.

13. A beneficiary could elect to receive hospice benefits for two periods of 90 days and, thereafter, additional service for periods of 60 days per period.

14. After the second 90-day period, for the beneficiary to continue to receive hospice benefits, Medicare required that a physician re-certify that the beneficiary was terminally ill and include clinic findings or other documentation supporting the diagnosis of terminal illness. For re-certifications, Medicare required a hospice physician or nurse practitioner to meet with the beneficiary in person and conduct a face-to-face evaluation before signing a certification of terminal illness.

15. Most providers, including Blue Sky, submitted their claims electronically pursuant to an agreement with Medicare that they would submit claims that were accurate, complete, and truthful.

//

B.  THE FRAUDULENT SCHEME

16.  Beginning no later than in or around October 2014, and continuing through at least in or around October 2016, in Los Angeles County, within the Central District of California, and elsewhere, defendant THROPAY, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly, willfully, and with intent to defraud, executed, and attempted to execute, and willfully caused to be executed a scheme and artifice: (1) to defraud a health care benefit program, namely, Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (2) to obtain money from Medicare by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C.  MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

17.  The fraudulent scheme operated, in substance, in the following manner:

a.  In operating Blue Sky, OWNER 1 and OWNER 2 paid recruiters, known as "marketers" or "cappers," including NURSE 1, illegal kickbacks in exchange for referring beneficiaries to Blue Sky.  The amount of the kickback varied, but was approximately $800 per beneficiary per month the beneficiary remained on hospice care with Blue Sky.  The recruiters often paid the Blue Sky beneficiaries they recruited a portion of this kickback, usually approximately $300 to $400 per month that the beneficiary remained on hospice care with Blue Sky.

    b. If the beneficiary recruited was eligible to receive hospice benefits from Medicare, OWNER 1 or OWNER 2 directed a nurse or physician, such as defendant THROPAY, to conduct an evaluation of the beneficiary. Blue Sky paid defendant THROPAY for performing evaluations of Medicare beneficiaries.

    c. During these evaluations, defendant THROPAY often conducted only a cursory examination, without consulting medical records or the beneficiary's PCP about the beneficiary's conditions, diagnoses, or prognoses, before falsely certifying that the beneficiaries were terminally ill. In fact, and as defendant THROPAY knew from his purported examinations of the beneficiaries, the overwhelming majority of the Blue Sky hospice beneficiaries he saw were not terminally ill.

    d. In order to induce beneficiaries to continue to sign up for the unnecessary hospice care for which Blue Sky would receive payment from Medicare, defendant THROPAY would fail to explain to the beneficiaries either that he was certifying them as having a terminal illness that would likely cause them to die in six months or less or the nature of hospice services, including that accepting services from Blue Sky hospice would affect the beneficiaries' ability to receive services from other providers, including their PCPs.

    e. Once the beneficiary was admitted to hospice, OWNER 1 and OWNER 2 caused Blue Sky to fraudulently bill Medicare for medically unnecessary hospice services for beneficiaries obtained through the payment of illegal kickbacks.

  18. Between October 2014 and October 2016, Blue Sky submitted to Medicare approximately $3,002,443 in claims for hospice services provided to beneficiaries with defendant THROPAY listed as the

referring or attending physician on the claims, and was paid approximately $1,761,401 based on these claims.

C. <u>EXECUTIONS OF THE FRAUDULENT SCHEME</u>

19. On or about the dates set forth below, within the Central District of California, and elsewhere, defendant THROPAY, together with others known and unknown to the Grand Jury, aiding and abetting each other, knowingly and willfully executed, attempted to execute, and willfully caused the execution of the fraudulent scheme described above by falsely certifying that the beneficiaries identified below were terminally ill, and causing to be submitted to Medicare the following false and fraudulent claims for payment of hospice services:

| COUNT | CLAIM NO. | DATE CLAIM PAID | AMOUNT OF CLAIM BILLED | BENEFICIARY |
|---|---|---|---|---|
| ONE | 21524600280004CAR | 9/17/2015 | $7,989 | P.L. |
| TWO | 21524600302104CAR | 9/28/2015 | $7,989 | E.L. |
| THREE | 21527800321504CAR | 10/19/2015 | $7,095 | M.L. |
| FOUR | 21530800182404CAR | 11/18/2015 | $6,474 | F.C. |

FORFEITURE ALLEGATION

[18 U.S.C. § 982]

1.   Pursuant to Rule 32.2(a), Fed. R. Crim. P., notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(7) and Title 28, United States Code, Section 2461(c), in the event of the defendant JOHN PAUL THROPAY, M.D.'s conviction of the offenses set forth in any of Counts One through Four of this Indictment.

2.   Defendant THROPAY, if so convicted, shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, that constitutes or is derived, directly or indirectly, from the gross proceeds traceable to the commission of any offense of conviction; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), defendant THROPAY, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as a result of any act or omission of defendant THROPAY, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the Court; (d) has been substantially diminished in value; or (e) has

been commingled with other property that cannot be divided without difficulty.

                                      A TRUE BILL

                                      /S/
                               Foreperson

NICOLA T. HANNA
United States Attorney

*Brandon Fox*
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

RANEE A. KATZENSTEIN
Assistant United States Attorney
Chief, Major Frauds Section

KRISTEN A. WILLIAMS
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DANIEL KAHN
Acting Chief, Fraud Section
U.S. Department of Justice

ALLAN MEDINA
Deputy Chief, Fraud Section
U.S. Department of Justice

NIALL M. O'DONNELL
Assistant Chief, Fraud Section
U.S. Department of Justice

EMILY Z. CULBERTSON
Trial Attorney, Fraud Section
U.S. Department of Justice

9