TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

DANIEL KAHN
Acting Chief, Fraud Section
EMILY Z. CULBERTSON (Cal. Bar 282560)
Trial Attorney
United States Department of Justice
Fraud Section, Criminal Division
    300 N. Los Angeles Street, Suite 2001
    Los Angeles, California 90012
    Telephone: (202) 230-0673
    E-mail:   emily.culbertson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:20-CR-418-MWF |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT |
| v. | |
| JOHN PAUL THROPAY, M.D., | Hearing Date: June 28, 2021<br>Hearing Time: 1:30 P.M.<br>Courtroom:   5A |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the Fraud Section of the United States Department of Justice, hereby submits this its Opposition to Defendant's Motion to Dismiss the Indictment (Dkt. 26).

    This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 24, 2021                 Respectfully submitted,

                                    TRACY L. WILKISON
                                    Acting United States Attorney

                                    BRANDON D. FOX
                                    Assistant United States Attorney
                                    Chief, Criminal Division

                                    DANIEL KAHN
                                    Acting Chief, Fraud Section


                                         /s/
                                    _____
                                    EMILY Z. CULBERTSON
                                    Trial Attorney
                                    United States Department of Justice
                                    Criminal Division, Fraud Section

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION...................................................1

II.   BACKGROUND.....................................................2

III.  LEGAL STANDARD.................................................4

    A.    Sufficiency of Indictment................................4

    B.    Challenge to Grand Jury Proceedings......................5

IV.   ARGUMENT.......................................................6

    A.    The Indictment Sufficiently Pleads Health Care Fraud......6

        1.    The language of the Indictment puts defendant on
            notice of the charges...............................7

        2.    The Indictment should be read as a whole and with
            common sense........................................8

        3.    Inquiry outside the Indictment is improper..........9

    B.    Defendant Fails to Carry the Heavy Burden to Overcome
        Presumption of Regularity of Grand Jury Proceedings......12

        1.    Dismissal is unwarranted as there has been no
            prosecutorial misconduct, let alone flagrant
            prosecutorial misconduct...........................12

        2.    Questioning the quality of the evidence presented
            to the grand jury is insufficient for dismissal.....14

V.    CONCLUSION....................................................18

**TABLE OF AUTHORITIES**

**CASES**

Bank of Nova Scotia v. United States,
    487 U.S. 250 (1988).......................................13, 16

Hamling v. United States,
    418 U.S. 87 (1974).........................................6, 8

Russell v. United States,
    389 U.S. 749 (1962)..........................................8

United States v. Al Mudarris,
    695 F.2d 1182 (9th Cir. 1983) ...............................6

United States v. AseraCare, Inc.,
    938 F.3d 1278 (11th Cir. 2019)............................12, 16

United States v. Bobo,
    344 F.3d 1076 (11th Cir. 2003)..............................11

United States v. Boren,
    278 F.3d 911 (9th Cir. 2002)................................9

United States v. Buckley,
    689 F.2d 893 (9th Cir. 1982)..........................4, 8, 9

United States v. Buffington,
    815 F.2d 1292 (9th Cir. 1987).............................6, 14

United States v. Care Alternatives,
    952 F.3d 89 (3d Cir. 2020)..................................11

United States v. Costello,
    350 U.S. 359 (1956).......................................13, 14

United States v. Davis,
    336 F.3d 920 (9th Cir.2003).................................5

United States v. Gardens Reg'l Hosp. & Med. Ctr., Inc.,
    953 F.3d 1108 (9th Cir. 2020)...............................16

United States v. Hasting,
    461 U.S. 499 (1983)........................................12

United States v. Hinton,
    222 F.3d 664 (9th Cir. 2000)................................4

United States v. Isgro,
    974 F.2d 1091 (9th Cir. 1992)..............................5, 6

United States v. Jensen,
    93 F. 3d 667 (9th Cir. 1996)..............................5, 12

United States v. Kennedy,
    564 F.2d 1329 (9th Cir. 1977)................................13

United States v. Larrazolo,
    869 F.2d 1354(9th Cir. 1989) ................................6

United States v. Milovanovic,
    678 F.3d 713 (9th Cir. 2012)..............................5, 7

United States v. Ors, Inc.,
    997 F.2d 628 (9th Cir. 1993) ................................4

United States v. Rutgard,
    116 F.3d 1270 (9th Cir. 1997)...............................16

United States v. Sears, Roebuck & Co.,
    719 F.2d 1386 (9th Cir. 1983)...............................13

United States v. Venegas,
    800 F.2d 868 (9th Cir. 1986) ................................6

United States v. Williams,
    504 U.S. 36 (1992)...............................13, 14, 16

United States v. Woodruff,
    50 F.3d 673 (9th Cir. 1995)..................................4

Universal Health Servs., Inc. v. United States ex rel. Escobar,
    136 S. Ct. 1989, 1999 (2016)...............................16

**STATUTES**

18 U.S.C. § 1347..................................................7

42 U.S.C. § 1395x................................................10

**REGULATIONS**

42 C.F.R. § 418.20...............................................10

42 C.F.R. § 418.22...............................................10

42 C.F.R. § 418.3................................................10

79 Fed. Reg. 50470...............................................11

**RULES**

Fed. R. Crim. P. 12..............................................5

Fed. R. Crim. P. 7............................................1, 4

1

### MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      Defendant John Thropay ("defendant") has filed a Motion to

4 Dismiss ("Motion") that improperly seeks to test the sufficiency of

5 the government's evidence, rather than the allegations in the

6 Indictment.  The Indictment here meets its constitutional

7 requirements: it informs defendant of the charges in enough detail to

8 avoid unfair surprise at trial and prevent double jeopardy.

9 Specifically, defendant is charged with falsely certifying that

10 Medicare beneficiaries were terminally ill and thus causing Blue Sky

11 Hospice, Inc. ("Blue Sky Hospice") to fraudulently bill Medicare for

12 medically unnecessary hospice services.  (Dkt. 1 ["Indict."] ¶¶ 17(c)

13 & (e), 19.)  Defendant signed these false certifications without

14 examining the patients, without consulting medical records or the

15 patients' treating physician, and without even telling the patients

16 that they were terminally ill.  (Id. ¶ 17(c), (d).)  The sufficiency

17 of an indictment is not determined by whether it could have been

18 drafted with more detail.  The Indictment here contains a "plain,

19 concise, and definite written statement of the essential facts

20 constituting the offense charged."  Fed. R. Crim. P. 7(c)(1).  This

21 is all the Constitution requires.

22      Defendant also argues for dismissal based on his speculation

23 that the government could not possibly have presented "any evidence"

24 to the grand jury to support the elements of health care fraud, and

25 that the "quality of the evidence" was questionable.  (See, e.g.,

26 Mot. at 8, 13.)  This falls far short of the required showing for

27 dismissal arising from an error before the grand jury — that the

28 error interfered with the grand jury's independence and the integrity

of the grand jury proceeding.  Indeed, defendant acknowledges that he "does not argue nor suggest that the Government engaged in any knowing misconduct" before the grand jury.  (Mot. at 13.)  There was no deception and the grand jury proceedings were not unfair, let alone fundamentally so.  Accordingly, defendant's motion must be denied.

## II.  BACKGROUND

The Indictment alleges that defendant engaged in a scheme to defraud Medicare by falsely certifying Medicare beneficiaries as terminally ill, even though they were not, which caused Blue Sky Hospice to submit false and fraudulent claims to Medicare for payment of unnecessary hospice services.  (Indict. ¶ 19.)  Between October 2014 and October 2016, Blue Sky Hospice submitted over $3 million in claims for hospice services based on defendant's certifications, and was paid $1.8 million as a result.  (Id. ¶ 18.)

The owners of Blue Sky Hospice paid patient recruiters, known as marketers, illegal kickbacks of approximately $800 per patient per month in exchange for recruiting patients to receive hospice at Blue Sky.  The recruiters in turn paid the patients several hundred dollars a month to stay on hospice.  (Id. ¶ 17(a).)  Once the patient was recruited to receive hospice, the owners of Blue Sky Hospice directed defendant to evaluate the patient for hospice.  (Id. ¶ 17(b).)  Defendant conducted a cursory examination without any prior medical records and without consulting the patients' primary care physicians and certified the patients as terminally ill when in fact they were not.  (Id. ¶ 17(c).)  Defendant failed to inform the patients that he was certifying them as having a terminal illness, and failed to tell them that being on hospice could prevent them from

getting treatment for any medical issues other than the "palliative" care provided by hospice.  (Id. ¶ 17(d).)

At trial, the government intends to prove that defendant engaged in the scheme by presenting the following types of evidence, among others:[1]

- testimony variously from patients and their family members that the patients were not terminally ill at the time of defendant's certification, that defendant was not their treating physician, that he signed the patients up for hospice without conducting a physical examination and after only speaking with them for a short period, that defendant never told them what their diagnosis was or that they were dying, and that in some instances they received a cash payment from the Blue Sky Hospice nurse or recruiter for staying on hospice;

- testimony from some patients' primary care physicians ("PCPs") that their patients were not terminally ill, did not have the diagnoses listed in defendant's certifications, and that defendant never consulted them regarding the patients' health conditions or treatment;

- Blue Sky Hospice medical records showing that there were no PCP or hospital records in Blue Sky Hospice's files supporting defendant's diagnoses or his certifications of terminal illness;

- Medicare claims data showing that defendant had no history treating the patients he certified, and that the vast majority of the patients Thropay certified to receive hospice at Blue Sky Hospice were discharged alive;

---

[1]    Discovery relating to this evidence has been produced in the case and will continue to be produced promptly as it is obtained and/or generated.

- Testimony from a nurse and others associated with Blue Sky Hospice that they paid kickbacks to recruit Medicare beneficiaries to receive medically unnecessary hospice, and that certain patients Thropay certified as terminally ill were not actually terminally ill;

- Testimony from Medicare employees and/or contractors related to Medicare's regulations, Thropay's and Blue Sky Hospice's Medicare enrollment records, and Thropay's statements, among other things.

## III. LEGAL STANDARD

### A. Sufficiency of Indictment

Federal Rule of Criminal Procedure 7 states that an indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). Generally, an indictment is sufficient if it sets forth the elements of the charged offense so as to ensure the right of the defendant not to be placed in double jeopardy and to be informed of the offense charged. United States v. Woodruff, 50 F.3d 673, 676 (9th Cir. 1995), as amended (Apr. 19, 1995), citing United States v. Ors, Inc., 997 F.2d 628 (9th Cir. 1993). The test for sufficiency of the indictment is "not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." United States v. Hinton, 222 F.3d 664, 672 (9th Cir. 2000).

The government "need not allege its theory of the case or supporting evidence" in an indictment. United States v. Buckley, 689 F.2d 893, 897 (9th Cir. 1982). In Buckley, the Ninth Circuit applied these principles and reversed the dismissal of a criminal case,

1   holding that the indictment provided the defendant with sufficient

2   notice despite the court's harsh criticism that the indictment was

3   "lengthy, confusing, and largely irrelevant."  Buckley, 689 F.2d at

4   899.

5        "In cases where the indictment tracks the words of the statute

6   charging the offense, the indictment will be held sufficient so long

7   as the words unambiguously set forth all elements necessary to

8   constitute the offense."  United States v. Milovanovic, 678 F.3d 713,

9   727 (9th Cir. 2012), as amended (May 22, 2012), citing United States

10  v. Davis, 336 F.3d 920, 922 (9th Cir.2003)).  A "bare bones"

11  indictment, employing the statutory language alone, is common and

12  permissible "so long as the statute sets forth fully, directly and

13  clearly all essential elements of the crime to be punished."  Id.

14       An indictment is not a reflection of the strength of the

15  government's case, nor may it be used to "assess the quality of the

16  evidence presented to the grand jury."  United States v. Jensen, 93

17  F. 3d 667, 669 (9th Cir. 1996).  It is certainly not intended to "be

18  used as a device for a summary trial of the evidence."  Id.

19       **B.    Challenge to Grand Jury Proceedings**

20       Federal Rule of Criminal Procedure 12 permits the defense to

21  raise a pretrial motion to dismiss "if the basis for the motion is

22  then reasonably available and the motion can be determined without a

23  trial on the merits."  Fed. R. Crim. P. 12(b)(3).  Included in the

24  possible bases for such a motion is "an error in the grand-jury

25  proceeding."  Id.  This Court may dismiss an indictment "if it

26  perceives constitutional error that interferes with the grand jury's

27  independence and the integrity of the grand jury proceeding."  United

28  States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992).  Dismissal of

                                    5

an indictment is thus warranted only if the proceedings were rendered "fundamentally unfair, allowing the presumption of prejudice to the defendant." Id. (quoting United States v. Larrazolo, 869 F.2d 1354, 1357-58 (9th Cir. 1989)).  It is defendant who bears this "difficult" and "heavy" burden to meet this high standard for dismissal.  United States v. Al Mudarris, 695 F.2d 1182, 1185 (9th Cir. 1983); United States v. Venegas, 800 F.2d 868, 869-70 (9th Cir. 1986).  This inquiry "focuses on the impact of prosecutorial misconduct on the grand jury's impartiality, not on prosecutorial culpability." Larrazolo, 869 F.3d at 1357.

Furthermore, even in the context of an allegation of government misconduct, "[t]he presumption of regularity which attaches to Grand Jury proceedings still abides."  Hamling v. United States, 418 U.S. 87, 129 n.23 (1974); United States v. Buffington, 815 F.2d 1292, 1304 (9th Cir. 1987) ("[A]n indictment regular on its face and returned by a legally constituted and unbiased grand jury is presumed to be valid; the party challenging this presumption faces a heavy burden.") (emphasis added).

## IV.  ARGUMENT

### A.  The Indictment Sufficiently Pleads Health Care Fraud

Defendant's Motion should be denied for the following reasons. First, the Indictment is sufficiently pleaded in that it puts defendant on notice of the charges against him.  The government's theory of the case and supporting evidence need not be included in the Indictment, nor can the sufficiency of the evidence be judged by the Indictment.  Second, the allegations, read together and with common sense, clearly charge defendant with falsely certifying patients as terminally ill when they were not, causing Blue Sky

1  Hospice to fraudulently submit hospice claims which were paid by

2  Medicare.  And, third, Defendant's citation to numerous Medicare

3  regulations are outside the four corners of the Indictment and do not

4  undermine the sufficiency of its pleadings.

5                  1.    <u>The language of the Indictment puts defendant on</u>
                         <u>notice of the charges.</u>

6

7        Defendant claims that the Indictment "utterly fails to identify

8  what aspect of Dr. Thropay's alleged conduct was unlawful," and that

9  "there are no allegations to support the government's bald assertion

10  that Dr. Thropay falsely certified a patient to be terminally ill."

11  (Mot. at 7, 4.)  To the contrary, the indictment pleads all the

12  necessary elements of the charges against defendant, and therefore

13  meets the constitutional requirements.  <u>Milovanovic</u>, 678 F.3d at 727

14  (approving indictment that tracks the language of the statute and

15  therefore sets forth "all elements necessary to constitute the

16  offense").

17        Here, as defendant concedes, the "Indictment alleges the

18  essential elements of the charged offense by tracking the language of

19  18 U.S.C. § 1347."  (Mot. at 3.)  Section 1347 punishes one who

20  "knowingly and willfully executes. . . a scheme or artifice (1) to

21  defraud any health care benefit program; or (2) to obtain, by means

22  of false or fraudulent pretenses, representations, or promises," the

23  money or property of a health care benefit program.  18 U.S.C.

24  § 1347.  These elements are present in the charges against defendant.

25  (Indict. ¶ 16.)  The Indictment further charges that defendant

26  carried out the scheme "by falsely certifying that the [specific

27  beneficiaries identified in the Indictment] were terminally ill, and

28

                                   7

1  causing to be submitted to Medicare the [listed] false and fraudulent

2  claims for payment of hospice services." (Id. ¶ 19.)

3      Generally, the government "need not allege its theory of the

4  case or supporting evidence" in an Indictment. Buckley, 689 F.2d at

5  897. Defendant cites Russell v. United States, 389 U.S. 749 (1962),

6  for the proposition that the Indictment must plead facts and

7  circumstances of the offense charged. (Mot. at 3-4.) In Russell, a

8  defendant was charged with having failed to answer questions before a

9  Senate subcommittee, and could only be found guilty if the questions

10 he refused to answer were pertinent to the subject of the

11 subcommittee's inquiry. 389 U.S. at 764. However, the indictment in

12 that case failed to allege what the subject matter of the inquiry

13 was. The Supreme Court held that the indictment was insufficient,

14 because it did not state the subject that was under inquiry. Hamling

15 v. United States, 418 U.S. 87, 118 (1974) (citing Russell, 389 U.S.

16 at 764). Because that particular fact was central to the guilt

17 determination, the Court held it had to be alleged in the indictment.

18 Here, however, defendant has all the facts needed to know the charges

19 against him, including the identification of certain claims defendant

20 caused to be submitted with his false certifications. (Indict.

21 ¶ 19.) As such, he has sufficient information to provide him with

22 notice of the charges.

23         2.  The Indictment should be read as a whole and with
               common sense.

24

25      In the Motion, defendant minutely examines singular allegations

26 regarding the means defendant is charged with using to carry out the

27 fraudulent scheme: payments he received from the hospice company

28 (Mot. at 4:6-10); his cursory examinations of Medicare beneficiaries

1   (id. at 4:26-6:1); and his failure to inform the patients that he had

2   certified them as terminally ill or signed them up for hospice (id.

3   at 6:4-8:1).  In examining each of these allegations separately, he

4   ignores the crux of the alleged fraudulent conduct: that he falsely

5   certified that patients were terminally ill, which caused fraudulent

6   claims to be submitted to Medicare.  (Indict. ¶ 19.)  Indeed, the

7   Ninth Circuit is clear that "an indictment should be: (1) read as a

8   whole; (2) read to include facts which are necessarily implied; and

9   (3) construed according to common sense."  Buckley, 689 F.2d at 899.

10  Thus, the allegations defendant challenges should be read together

11  with the rest of the Indictment.

12      Defendant falsely certified patients as terminally ill even

13  though they were not, and when they had also been recruited by

14  marketers to receive hospice; he did so without an examination,

15  without consulting with the patients' treating physicians, or

16  reviewing any medical records; he also failed to even tell the

17  patients that he believed that they were terminally ill or that he

18  was signing them up for hospice, which would effectively stop

19  treatment for any of their illnesses so that they could be provided

20  comfort as they died.  (Indict. ¶ 17.)  Additional evidence will be

21  presented at trial, but the sufficiency of the evidence is not at

22  issue here.  Rather, the only issue is whether the Indictment is

23  sufficiently pleaded, and it clearly is.

24          3.   Inquiry outside the Indictment is improper.

25      At this stage of the proceedings, it would be improper for the

26  Court to inquire further than the "four corners" of the

27  Indictment.  United States v. Boren, 278 F.3d 911, 914 (9th Cir.

28  2002).  Nonetheless, defendant asks the Court to examine the many

9

Medicare regulations referenced in his Motion.  For example, defendant examines the regulation regarding the ability of registered nurses to examine hospice patients.  (Mot at 5.)  This is completely beside the point, as the false certifications of defendant — a physician — are at issue.  (Indict. ¶ 10); see also 42 C.F.R. §§ 418.20, 418.22 (stating that for a patient to be eligible for hospice care under Medicare, the patient must be certified as terminally ill).  Defendant also argues that for purposes of certification, he was entitled to assume the role of attending physician for himself as well as Medical Director at the hospice. (Mot. at 5, citing 42 U.S.C. § 1395x(dd)(3)(B).)  This is a misreading of the statute and the related regulation, which provides that the "attending physician" means the physician "whom the individual identifies as having the most significant role in the determination and delivery of medical care to the individual at the time the individual receives hospice care."  42 U.S.C. § 1395x(dd)(3)(B); see also 42 C.F.R. § 418.3 (same definition).  Thus, it is the patient who determines who is the attending physician, not the defendant.  The government expects the evidence at trial to show that defendant had no significant role in the care of the patients he certified for hospice; on the contrary, patients are expected to testify that they only saw him one time for a few minutes, and when interviewed by law enforcement, several patients identified a different doctor as their primary care physician.  Defendant further argues that he is not required under the regulations to tell a patient that he or she is terminally ill.  (Mot. at 6.)  This misses the point; the indictment does not charge defendant solely because he failed to tell patients they were terminally ill.  Rather, the

government will argue that defendant did not tell the patients that they were terminally ill because he knew that they were not.

Defendant also dives into the regulations to argue that the physician may use his clinical judgment to certify a patient as terminally ill. (Mot. at 4.) However, he does not and cannot argue that he is entitled to certify someone as terminally ill without providing them with an exam or consulting with any medical records or any prior treating physician. See United States v. Care Alternatives, 952 F.3d 89, 93 (3d Cir. 2020), cert. denied, 141 S. Ct. 1371, 209 L. Ed. 2d 119 (2021) (citing 79 Fed. Reg. 50470) (physician's ability to rely on his clinical judgment "does not negate the fact that there must be a clinical basis for a certification"). Defendant also cites the out-of-circuit civil False Claims Act case, United States v. AseraCare, Inc., 938 F.3d 1278, 1282 (11th Cir. 2019), in support of the concept that some patients may get better and exit hospice. This is immaterial to a terminal illness certification that was false at the outset. Indeed, the Eleventh Circuit in AseraCare acknowledged that "[a] physician cannot . . . hold a clinical judgment under the eligibility framework that disregards the patient's underlying medical condition. *Such a clinical judgment would clearly be illegitimate under the law.*" Id. at 1293 (quotations omitted) (emphasis added).

Defendant cites United States v. Bobo, 344 F.3d 1076, 1084 (11th Cir. 2003) (Mot. at 4:9-10), presumably in support of his argument that defendant's receipt of payment from Blue Sky Hospice is immaterial. But that case is inapposite; the issue in Bobo was that "the indictment fail[ed] to mention a fraud in connection with the delivery or payment of health care benefits, items, or services," and

11

1  to "specify of what precisely Dr. Bobo was allegedly trying to

2  defraud the MWP program: benefits, items, services, or money."  This

3  is not the case here, where the Indictment alleges that defendant

4  committed health care fraud "by falsely certifying that the Medicare

5  beneficiaries identified below were terminally ill, and causing to be

6  submitted false and fraudulent claims for payment of hospice

7  services."  (Indict. ¶ 19.)  Thus, defendant's false certification

8  regarding the delivery of a health care service (hospice) caused

9  Medicare to pay a health care benefit (dollars) to Blue Sky Hospice.

10       In sum, the Indictment alleges that defendant executed a scheme

11  to defraud Medicare by falsely certifying patients as terminally ill,

12  and specifically lists certain claims and patients as examples of the

13  fraudulent claims paid by Medicare as a result.  (Indict. ¶ 17(b),

14  (c), (d), ¶ 19.)  Accordingly, the Indictment puts defendant on

15  notice of the charges against him.  Defendant is not entitled to

16  assess the quality of the evidence based on the Indictment, nor can

17  he use this Motion as a device for a summary trial of the evidence.

18  Jensen, 93 F.3d at 669.  Defendant's Motion should be denied.

19       **B.    Defendant Fails to Carry the Heavy Burden to Overcome
            Presumption of Regularity of Grand Jury Proceedings**

20

21            1.    Dismissal is unwarranted as there has been no
                  prosecutorial misconduct, let alone flagrant
                  prosecutorial misconduct.

22

23       Defendant argues that Federal Rule of Criminal Procedure 12

24  gives courts supervisory powers over grand juries.  (Mot. at 8,

25  citing United States v. Hasting, 461 U.S. 499 (1983).)  However, the

26  Supreme Court has clarified that the Court's supervisory powers are

27  limited with regard to supervising grand jury proceedings.  "Hasting,

28  and the cases that rely upon the principle it expresses, deal

12

strictly with the courts' power to control their *own* procedures," as opposed to those of a grand jury.  United States v. Williams, 504 U.S. 36, 45 (1992) (emphasis in original).  This is because the "grand jury is an institution separate from the courts, over whose functioning the courts do not preside."  Id. at 47.  Therefore, "an indictment valid on its face is not subject to . . . challenge" based upon "reliability or competence of the evidence presented to the grand jury."  Bank of Nova Scotia v. United States, 487 U.S. 250, 261-62 (1988); see also United States v. Costello, 350 U.S. 359, 363-64 (1956) ("An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits.  The Fifth Amendment requires nothing more.").

The Ninth Circuit has been clear that "an otherwise valid indictment returned by an apparently unbiased grand jury" should be dismissed "only in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to the grand jury."  United States v. Kennedy, 564 F.2d 1329, 1338 (9th Cir. 1977) (upholding denial of motion to dismiss indictment) (cited in Mot. at 8); see also United States v. Sears, Roebuck & Co., 719 F.2d 1386, 1391 (9th Cir. 1983) ("[A]n indictment may be dismissed only in flagrant cases of prosecutorial misconduct.") (quotations omitted) (cited in Mot. at 8).[2]

---

[2] In United States v. Mechanik, 475 U.S. 66, 73 (1986), also cited by defendant, the court reversed dismissal of indictment because allowing an unauthorized person into the grand jury room was harmless error, even if contrary to Rule 6(d).  This case is inapplicable here, as there is no suggestion that an unauthorized person was admitted to the grand jury room.

13

1        Here, Defendant expressly disclaims any argument that the

2   prosecution knowingly committed misconduct before the grand jury.

3   (Mot. at 13.)  Without any suggestion of flagrant misconduct or

4   fundamental unfairness, an indictment regular on its face is presumed

5   to be valid.  Buffington, 815 F.2d at 1304.

6            2.   Questioning the quality of the evidence presented to
                  the grand jury is insufficient for dismissal
7

8        Defendant argues that the Court may dismiss the Indictment

9   because the "quality of the evidence" presented to the grand jury is

10  in question.  (Mot. at 8.)  But this very argument has been rejected

11  by the Supreme Court.  Williams, 504 U.S. at 51 (rejecting invitation

12  to impose "[j]udicial supervision of the quantity and quality of

13  evidence relied upon by the grand jury"); see also Costello, 350 U.S.

14  at 363-64 ("If indictments were held open to challenge on the ground

15  that there was inadequate or incompetent evidence before the grand

16  jury, the resulting delay would be great indeed.").

17       Moreover, it is well established that the government is not

18  required to present exculpatory evidence to the grand jury, even

19  "substantial" exculpatory evidence, nor a defendant's argument

20  regarding the meaning and import of a document.  Williams, 504 U.S.

21  at 53.  In Williams, a grand jury indicted defendant for submitting

22  fraudulent financial statements to a lender for the purpose of

23  obtaining credit.  The allegedly fraudulent statements included

24  defendant's characterization of certain notes receivable.  Defendant

25  moved to dismiss the indictment on the ground that the government

26  failed to tell the grand jury about his accounting records and his

27  contemporaneous statements made under oath to a bankruptcy court that

28  he believed showed that his characterization of the notes receivable

1   was proper and that, therefore, proved that defendant lacked criminal

2   intent.  The district court ordered disclosure of grand jury

3   materials and determined, upon its review of such materials, that the

4   indictment should be dismissed because "the withheld evidence was

5   'relevant to an essential element of the crime charged,' created 'a

6   reasonable doubt about [defendant's] guilt,' [and the government] had

7   failed to present the purported exculpatory evidence to the grand

8   jury."  Id. at 39.  The Supreme Court reversed, reasoning:

9       It is axiomatic that the grand jury sits not to determine
        guilt or innocence, but to assess whether there is adequate
10      basis for bringing a criminal charge.  That has always been
        so; and to make the assessment it has always been thought
11      sufficient to hear only the prosecutor's side. . . .
        Imposing upon the prosecutor a legal obligation to present
12      exculpatory evidence in his possession would be
        incompatible with this system.
13

14  504 U.S. at 51 (citations omitted).  As such, the grand jury has no

15  obligation to conduct "a 'balanced' assessment of the entire

16  matter."  Id. at 52.

17      Despite the clear legal precedent that questioning a grand

18  jury's determination of probable cause does not warrant dismissal,

19  defendant attempts to mount a pretrial attack by speculating that the

20  grand jury was not presented with "all material evidence and

21  applicable law" to support the charges.  (Mot. at 9.)  Defendant

22  argues that the grand jury was not presented with: expert testimony

23  (Mot. at 10); sufficient evidence on defendant's specific intent to

24  defraud Medicare (id. at 10-11); patient-signed election statements

25  (id. at 13); and relevant Medicare statutes and regulations (id.).[3]

26

27  [3] The indictment itself belies many of defendant's assertions, as it
    includes substantial allegations about the Medicare rules and
    regulations.  (Indict. ¶¶ 6-15.)  Also, the indictment does not
28  contain allegations about the existence or non-existence of election
                                                    *(footnote cont'd on next page)*

15

1   But the government is not required to present exculpatory evidence or

2   defendants' view of the facts or law to the grand jury.  Williams,

3   504 U.S. at 53.  In the absence of any evidence of misconduct by the

4   government, this Indictment, "valid on its face is not subject to . .

5   . challenge" based upon "reliability or competence of the evidence

6   presented to the grand jury."  Bank of Nova Scotia, 487 U.S. at 261-

7   62.

8        Defendant seeks to impose the framework of the civil False

9   Claims Act ("FCA") on this case, arguing that the government must

10  somehow prove a violation of the Medicare regulations to prevail.

11  (Mot. at 9-10, citing Universal Health Servs., Inc. v. United States

12  ex rel. Escobar, 136 S. Ct. 1989, 1999 (2016); AseraCare, 938 F.3d at

13  1278,[4] and Winter ex rel. United States v. Gardens Reg'l Hosp. & Med.

14  Ctr., Inc., 953 F.3d 1108 (9th Cir. 2020).)  Although the government

15  may present evidence regarding violations of the Medicare

16  regulations, it is not required to do so.  See United States v.

17  Rutgard, 116 F.3d 1270, 1281 (9th Cir. 1997) ("This case is not about

18  violation of the rules of Medicare but about whether [defendant] made

19  representations that were in fact untrue in order to obtain money

20  from Medicare.").

21       Defendant cites AseraCare, an Eleventh Circuit case, for the

22  proposition that a physician is insulated from criminal liability for

23  false certifications because he may use his clinical judgement.

24

25  ─────────────────
    forms with patients' purported signature on them.  Defendant may
26  raise these forms at trial, but they have no bearing here in a motion
    to dismiss.

27  [4] The AseraCare case was decided after trial and upon consideration
    of evidence presented. 938 F.3d at 1301-02.  That is not the case
28  here, where the government has not yet had the opportunity to present
    its evidence.

1  (Mot. at 10.)   However, the AseraCare court recognized that a

2  "physician has offered no clinical judgement" if "the physician never

3  considered the underlying records supporting the prognosis at issue,

4  but instead rubber-stamped whatever file was put in front of him."

5  938 F.3d at 1302; see also Winter, 953 F.3d at 1113 ("A doctor, like

6  anyone else, can express an opinion that he knows to be false, or

7  that he makes in reckless disregard of its truth or falsity.").

8  Here, defendant is alleged to have similarly failed to exercise his

9  clinical judgment, having certified Medicare patients to be

10 terminally ill when those patients were not in fact dying, and after

11 conducting little to no examination of the patients and failing to

12 consult any medical records or the patients' true treating

13 physicians.   (Indict. ¶ 17(c), (d).)

14      Defendant also argues that the Indictment's allegations are

15 contradictory, specifically the allegations that, on one hand,

16 defendant conducted cursory examinations and, on the other, the

17 examinations were sufficient to give him knowledge that the patients

18 were not in fact dying.   (Mot. at 11.)   But defendant's failure to

19 conduct medical examinations and consult medical records or the

20 patients' true physicians can be used to prove defendant's intent

21 because it illustrates his "deliberate ignorance or reckless

22 disregard" of the truth.   See United States v. Dearing, 504 F.3d 897,

23 903 (9th Cir. 2007) ("We have repeatedly held that the intent to

24 defraud may be proven through reckless indifference to the truth or

25 falsity of statements.").   (See also Indict. ¶ 9, alleging that

26 defendant agreed "not to submit claims for payment to Medicare

27 knowing they were false or fraudulent or with deliberate ignorance or

28 reckless disregard of their truth or falsity").

Defendant further challenges the materiality of his false certifications to Medicare's decision to pay the fraudulent hospice claims. (Mot. at 12, citing Universal Health Servs., 136 S. Ct. at 2003) (holding that materiality "cannot be found where noncompliance is minor or insubstantial"). The Universal Health Servs. case relates to an "implied false certification theory of liability, which treats a payment request as a claimant's implied certification of compliance with relevant statutes, regulations, or contract requirements that are material conditions of payment." Id. at 1993. Here, however, the government expects the evidence at trial to show that defendant's false certifications were express rather than implied, in that he issued statements that the patients were terminally ill. Moreover, the Indictment clearly alleges that Medicare requires a physician to certify that the beneficiary is terminally ill to qualify for reimbursement, and that defendant's false certification caused false and fraudulent claims to be submitted to and paid by Medicare. (Indict. at ¶¶ 10, 17(c), 19.)

**V.    CONCLUSION**

The Indictment in this case satisfies constitutional standards and, along with the thorough discovery produced by the government, informs defendant of the charges in enough detail for him to prepare for trial and avoid double jeopardy. Moreover, defendant is unable to point to any misconduct before the grand jury, and the government was not required to present any exculpatory evidence or the defendant's view of the evidence to the grand jury. Therefore, his Motion should be denied.